IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOHN ROSS STENBERG,

                Petitioner,

v.                                            CASE NO. 22-3308-JWL

DONALD LANGFORD,

                Respondent.

## MEMORANDUM AND ORDER

This matter is a petition for writ of habeas corpus under 28 U.S.C. § 2254. Petitioner and state prisoner John Ross Stenberg proceeds pro se and challenges his state court convictions of rape, aggravated criminal sodomy, and aggravated indecent liberties with a child. Having considered Petitioner's claims, together with the state-court record and relevant legal precedent, the Court concludes that Petitioner **is not** entitled to federal habeas corpus relief and **denies** the petition.

### Nature of the Petition

Petitioner seeks federal habeas relief from his state-court convictions of rape, aggravated criminal sodomy, and aggravated indecent liberties with a child. As Ground One, he argues that his rights under the Sixth and Fourteenth Amendments to the United States Constitution were violated when he received ineffective assistance from his trial counsel. (Doc. 1, p. 5.) As Ground Two, Petitioner argues that his constitutional due process rights under the Fifth and Fourteenth Amendments were violated when law enforcement unconstitutionally coerced him into confessing. *Id.* at 6, 31.

1

**Factual and Procedural Background**[1]

K.P. and A.P. are sisters. Their mother, Stacey, was married to Stenberg. K.P. and A.P. lived with Stacey and Stenberg in Cimarron, Kansas, until January 2014, when the Kansas Department for Children and Families (DCF) removed the girls from the house and sought to have them adjudicated as children in need of care. DCF placed the girls in the home of Stephanie Casanova, who was a licensed foster parent. At the time of placement, K.P. had just turned five years old, and A.P. was three years old.

About four to five months after the girls were placed with Casanova, K.P. spontaneously announced at the dinner table that Stenberg "put his pee-pee on my pee-pee." Casanova reported K.P.'s statement by notifying the assigned social worker and calling an abuse hotline.

About a week later, A.P. disclosed at the dinner table that Stenberg had put his "pee-pee" in her mouth. K.P. and A.P. then talked with each other about what Stenberg had done to them, including having them get in bed with him naked. Casanova again reported the abuse, and an investigation into the allegations was initiated.

On May 16, 2014, Casanova took both girls to a Garden City police station for forensic interviews. Bethanie Popejoy, Senior Special Agent for the Kansa [*sic*] Bureau of Investigation assigned to the Child Victims Unit, interviewed the girls separately. The purpose of the interviews was to provide the girls an opportunity and a safe place to talk about the disclosures they already had made to Casanova. The interviews were video recorded.

K.P. told Popejoy that Stenberg had "put his pee-pee in [her] pee-pee," terms that Popejoy already had established referred to his penis and her vagina. K.P. acted out Stenberg's movements on the floor using her body, showing Popejoy how Stenberg kneeled over her and thrusted his hips so that "his privates would touch her privates." K.P. also role-played using anatomically realistic dolls representing her and Stenberg to demonstrate what Popejoy described as the missionary intercourse position. Popejoy testified that, based on K.P.'s testimony and descriptions, she believed it would have been "nearly impossible" for Stenberg not to have penetrated K.P.'s outer vagina. K.P. told Popejoy that Stenberg engaged in the conduct described more than once, but she was not able to confirm how many times. K.P. said she was four years old when it happened.

---

[1] The following facts are largely taken from the Kansas Court of Appeals' opinion in Petitioner's direct appeal. The Court presumes that the state court's findings of fact are correct unless Petitioner rebuts that presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Additional facts will be provided as necessary in the analysis section below. In a single paragraph in his petition, Petitioner briefly challenges the KCOA's finding that "K.P. told Popejoy that Stenberg had 'put his pee-pee in [her] pee-pee,'" contending that the record reflects that K.P. said he "'put his pee-pee *on* [her] pee-pee.'" (Doc. 1, p. 38.) Even assuming solely for the sake of argument that Petitioner is correct, he does not explain to this Court why that unsupported factual finding is relevant to whether he is entitled to federal habeas relief. Thus, this challenge is not addressed further in this order.

> Special Agent Popejoy then interviewed A.P., who reported that Stenberg had "put his wee-wee in [her] mouth" and "put his wee-wee in [her] pee-pee." Popejoy had talked about anatomical terms with A.P. and understood that "wee-wee" referred to Stenberg's penis and "pee-pee" was A.P.'s vagina. A.P. also role-played Stenberg's actions with dolls representing her and Stenberg. A.P. told Popejoy that Stenberg had put his penis in her mouth "a lot of times," but she was not able to specify how many.
>
> On May 19, 2014, Undersheriff Jeff Sharp interviewed Stenberg about the girls' statements. At the end of the interview, which lasted almost two hours, Stenberg verbally admitted he had rubbed his penis against K.P.'s vagina and put his penis in A.P.'s mouth twice. Stenberg then signed a written confession, in which he admitted that he twice "placed [his] soft penis against [A.P.'s] lips," that he "rubbed [his] soft penis against [K.P.] when [he] awoke from sleeping with no clothes on," and that he "rubbed it against her vagina."
>
> The State charged Stenberg with one count of rape, two counts of aggravated criminal sodomy, and one count of aggravated indecent liberties with a child. K.P. and A.P. both testified at trial. The jury convicted Stenberg as charged. The district court sentenced Stenberg to life in prison with no possibility of parole for 25 years on each of the four counts, ordering counts 1 and 4 to run consecutive to counts 2 and 3.

*State v. Stenberg*, 2017 WL 4455307, *1-2 (Kan. Ct. App. Oct. 6, 2017) (unpublished) (*Stenberg I*), *rev. denied* April 27, 2018.

Petitioner pursued a direct appeal and, on October 6, 2017, the Kansas Court of Appeals (KCOA) affirmed his convictions and vacated part of his sentence on grounds not relevant to this federal habeas matter. *See id.* at *1. On April 27, 2018, the Kansas Supreme Court (KSC) denied Petitioner's petition for review. Petitioner then sought state habeas relief by filing a motion pursuant to K.S.A. 60-1507. *Stenberg v. State*, 2022 WL 570830 (Kan. Ct. App. Feb. 25, 2022) (unpublished opinion) (*Stenberg II*), *rev. denied* Sept. 30, 2022. The state district court held an evidentiary hearing, after which it denied the motion. *Id.* at *1. Petitioner appealed, and on February 25, 2022, the KCOA affirmed the denial. *Id.* The KSC denied Petitioner's petition for review on September 30, 2022.

On December 21, 2022, Petitioner filed in this Court a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) As noted above, he asserts two grounds for relief: one based on ineffective assistance of trial counsel and the other based on the involuntary and coerced nature of his confession. Respondent filed his answer on June 2, 2023. (Doc. 12.) Petitioner filed his traverse on August 11, 2023. (Doc. 16.)

## General Standard of Review

This matter is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). Under the AEDPA, when a state court has adjudicated the merits of a claim, a federal court may grant habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). The Tenth Circuit has explained:

> [A] state-court decision is "contrary to" the Supreme Court's clearly established precedent if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from that precedent."

*Harmon v. Sharp*, 936 F.3d 1044, 1056 (10th Cir. 2019) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-08 (2000)). Moreover, in this context, an "unreasonable application of" federal law "must be objectively unreasonable, not merely wrong." *White v. Woodall*, 572 U.S. 415, 419 (2014) (internal quotation marks omitted).

The Court presumes that the state court's findings of fact are correct unless Petitioner rebuts that presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). *See also Wood v. Allen*, 558 U.S. 290, 301 (2010) ("[A] state-court factual determination is not

4

unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."). These standards are intended to be "difficult to meet," *Harrington v. Richter*, 562 U.S. 86, 102 (2011), and require that state-court decisions receive the "benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To the extent that more specific standards have been established for ineffective assistance of counsel claims and claims alleging illegally coerced confessions, they are included in the discussion section below.

## Discussion

**Ground One:  Ineffective Assistance of Trial Counsel**

In Ground One, Petitioner argues that he received ineffective assistance of trial counsel in four ways: (1) trial counsel failed to investigate seven individuals Petitioner identified as potential defense witnesses, (2) he failed to adequately prepare Petitioner to testify, (3) he failed to call an expert witness to review the victims' forensic interviews, and (4) he failed to file a motion for a departure sentence. (Doc. 1, p. 17.) Respondent asserts that Petitioner is not entitled to federal habeas relief on any of these grounds, although he does concede that Petitioner has exhausted each argument. (Doc. 12, p. 3.)

Petitioner raised these claims in his K.S.A. 60-1507 motion and they were the subject of an evidentiary hearing in the state district court, after which the state district court denied relief. *Stenberg II*, 2022 WL 570830, at *2-3. Specifically, the district court held: (1) trial counsel's decision not to investigate Petitioner's proposed witnesses was "sound strategy" in light of the fact he believed they could offer only character testimony, which could open the door to introduction of Petitioner's prior sexual offense convictions; (2) trial counsel's testimony that he prepared Petitioner to testify was more credible than Petitioner's testimony that he had not; (3) expert review of the victim interviews would have made no difference because the victims themselves testified

5

at trial; and (4) there was no factual support for the claim that trial counsel failed to perform posttrial functions. *Id.* The district court also found that Petitioner suffered no prejudice from any of the instances of alleged ineffectiveness because Petitioner had confessed to the crimes and the confession was introduced at trial. *Id.* On appeal, the KCOA analyzed the ineffective assistance of counsel claims and ultimately held that "even though some of [trial counsel]'s decisions were not strategic and were arguably deficient, [Petitioner] has not demonstrated that those actions had any impact on the outcome of the proceedings or deprived him of a fair trial." *Id.* at *4.

Claims of ineffective assistance are analyzed under the test established in *Strickland v. Washington,* 466 U.S. 668 (1984). Under *Strickland*, "a defendant must show both [(1)] that his counsel's performance fell below an objective standard of reasonableness and [(2)] that the deficient performance prejudiced the defense." *United States v. Holloway*, 939 F.3d 1088, 1102 (10th Cir. 2019) (internal quotation marks omitted). When, as here, alleged ineffective assistance of state-court counsel is the basis for a request for federal habeas relief, the federal habeas petitioner faces an even more difficult challenge. As the United States Supreme Court has explained:

> Establishing that a state-court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable application is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105. These standards are intended to be "difficult to meet," *id.* at 102, and they require that this Court give the state court decisions the "benefit of the doubt." *See Woodford*, 537 U.S. at 24.

6

The Court has carefully reviewed the arguments Petitioner made in his petition, the attachments to his petition, and his traverse. (Docs. 1, 1-1, and 16.) In the part of the form petition for stating Ground One, Petitioner asserts that with respect to the ineffective assistance of counsel claims, "the district court['s] findings of fact and conclusions of law are unreasonably decided." (Doc. 1, p. 5.) He further purports to "adopt[] all of the arguments counsel Jennifer C. Roth made in the Brief she filed on behalf of [Petitioner] in" his appeal from the denial of his 60-1507 motion. *Id.* at 18; (Doc. 16, p. 7). Petitioner's remaining arguments to this Court on Ground One consist of quotations from or references to the state-court record, lengthy quotations from the KCOA opinion, and reassertions of arguments he made to the KCOA.

Petitioner "'carries the burden of proof'" to show that he is entitled to federal habeas relief under the AEDPA. *See Frederick v. Quick*, 2023 WL 5195678, * 4, ___ F.4th ___, ___ (10th Cir. Aug. 14, 2023) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)). Simply put, he has not done so. And although this Court liberally construes Petitioner's pro se pleadings, it may not act as Petitioner's advocate. *See James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013). "[T]he court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). It "'may not rewrite a petition to include claims that were never presented.'" *Childers v. Crow*, 1 F.4th 792, 798 (10th Cir. 2021) (citation omitted).

Petitioner fails to articulate any way in which the KCOA's decisions on his claims of ineffective assistance of trial counsel meet the high, doubly deferential standard that must be met before this Court may grant federal habeas relief. Rather, Petitioner's arguments all focus on whether or not trial counsel's actions constituted ineffective assistance of counsel in the first place. But as noted above, that is not the focus of this Court's inquiry. *See Harrington*, 562 U.S. at 105

("Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)."). Instead, this Court may grant federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2).

The KCOA applied *Strickland*, which is the clearly established federal law for considering claims of ineffective assistance of counsel. *See Stenberg II*, 2022 WL 570830, at *4. Although Petitioner asks this Court to reconsider the arguments he made to the state courts and come to a difference conclusion, that is not this Court's role in a federal habeas matter. "When a federal court, on habeas review, examines state criminal convictions, the federal court does not sit as a 'super-appellate' court." *Davis v. Roberts*, 579 Fed. Appx. 662, 665 (10th Cir. 2014) (unpublished) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)); *see also Wood*, 558 U.S. at 301 ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.").

The Court has reviewed the relevant state court records, the relevant law, and the parties' submissions. The KCOA's decision regarding Petitioner's claims of ineffective assistance of trial counsel was not "contrary to, [nor did it] involve[] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), and it was not "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). The state courts applied the correct legal standards and Petitioner has not persuaded this Court that the KCOA's application of the test was unreasonable. Thus, this Court denies relief on this ground.

**Ground Two: Voluntariness of the Confession**

In Ground Two, Petitioner argues Undersheriff Sharp unconstitutionally coerced his confession in violation of his rights under the Fifth and Fourteenth Amendments. As Respondent admits, this issue was exhausted during Petitioner's direct appeal. (Doc. 12, p. 3); *See also Stenberg I*, 2017 WL 4455307, at *2-10. The district court denied his motion to suppress and, on appeal, the KCOA affirmed the denial, but disagreed with the district court on the propriety of some of Undersheriff Sharp's statements. The KCOA first set out the governing law:

> When a defendant challenges his or her statement to a law enforcement officer as involuntary, the State must prove the voluntariness of the statement by a preponderance of the evidence. *State v. Brown*, 305 Kan. 674, 683-84, 387 P.3d 835 (2017). The essential inquiry in determining whether a statement is voluntary is "whether the statement was the product of the free and independent will of the accused." *State v. Walker*, 283 Kan. 587, 596, 153 P.3d 1257 (2007). To make such an inquiry, the district court looks at the totality of the circumstances surrounding the statement and considers the following factors:
>
>> "(1) the accused's mental condition; (2) the manner and duration of the interrogation; (3) the ability of the accused to communicate on request with the outside world; (4) the accused's age, intellect, and background; (5) the fairness of the officers in conducting the interrogation; and (6) the accused's fluency with the English language." *Walker*, 283 Kan. at 596-97.

*Stenberg I*, 2017 WL 4455307, at *2-3.

The KCOA then noted that Petitioner "focuse[d] solely on one of the five factors: the fairness of Undersheriff Sharp in conducting the interrogation. [Petitioner] claims his confession was involuntary because Undersheriff Sharp misrepresented facts, misrepresented the law, and made implicit threats and inappropriate promises." *Id.* at 3. The KCOA turned first to the alleged factual misrepresentations and, contrary to Petitioner's arguments, held that substantial competent evidence supported the district court's holding that Undersheriff Sharp had neither factually misrepresented A.P.'s allegations against Petitioner nor factually misrepresented others' opinions

regarding the strength of A.P.'s and K.P.'s interviews. *Id.* at *3-4. Petitioner does not challenge this holding in the current federal habeas action.[2]

Regarding Petitioner's allegations that Undersheriff Sharp had misrepresented the law, the KCOA concluded:

> Undersheriff Sharp's suggestion that there may be a difference between rape with an erect penis and rape with a soft penis likely was misleading because this fact makes no difference in a case such as this where the victims were younger than 14 years old, the perpetrator was older than 18 years old, and Jessica's Law applied. The State would have charged Stenberg under 21-5503(a)(3) regardless of whether Stenberg's penis was erect or soft when the penetration occurred.

*Id.* at *6.

Thus, the KCOA explained, it was "a very close call as to whether there is substantial competent evidence to support the district court's conclusion that no legal misrepresentation was made here." *Id.* Even if there was legal misrepresentation and therefore an improper coercive tactic, however, the KCOA explained that the ultimate test was whether Petitioner's statements "were voluntarily made based on . . . the totality of the circumstances." *Id.*

The KCOA then turned to Petitioner's argument that Undersheriff Sharp's implicit threats and inappropriate promises illegally coerced Petitioner's confession. *Id.* The KCOA agreed with Petitioner that a number of statements he pointed to in the interrogation were improper and, as with the question of misrepresentations of the law, the KCOA stated that it would "consider the

---

[2] To the extent that the traverse could be liberally construed to argue for the first time that the KCOA erred in its analysis of factors other than the fairness of Undersheriff Sharp, (*see* Doc. 16, p. 35), those arguments were not made until the traverse. It is well-established that "[c]ourts routinely refuse to consider arguments first raised in a habeas traverse." *Martinez v. Kansas*, No. 5-3415-MLB, 2006 WL 3350653, *2 (D. Kan. Nov. 17, 2006) (unpublished order) (collecting cases); *See also LaPointe v. Schmidt*, No. 14-3161-JWB, 2019 WL 5622421, *5 (D. Kan. Oct. 31, 2019) (unpublished memorandum and order) (striking new claim from traverse). If the Court were to allow Petitioner to submit additional legal arguments in support of the petition in a traverse, it would then need to allow Respondent the opportunity to respond to them. This type of sur-reply is neither contemplated by the applicable rules nor conducive to reaching finality of briefing in federal habeas matters. *See Humphries v. Williams Nat. Gas Co.*, No. 96-4196-SAC, 1998 WL 982903, *1 (D. Kan. Sept. 23, 1998) (stating that the rules governing sur-replies "'are not only fair and reasonable, but they assist the court in defining when briefing matters are finally submitted and in minimizing the battles over which side should have the last word'"). For these reasons, the Court will not consider or further address arguments made for the first time in the traverse.

impropriety of Sharp's threats as a factor in deciding whether [Petitioner's] verbal and written statements were voluntary in the context of all the circumstances presented." *Id.* at *8. The KCOA disagreed, however, with Petitioner's contention that Undersheriff Sharp had made improper promises of leniency if Petitioner confessed. *Id.* at *8-9. This factual finding is the main focus of Petitioner's arguments in Ground Two of this federal habeas matter.

Finally, the KCOA looked at the totality of the circumstances, considering Petitioner's mental condition, the manner and duration of the interrogation, Petitioner's ability to communicate with the outside world, his age, his intellect, his prior experience with the criminal justice system, his ability to understand the English language, Undersheriff Sharp's improper suggestion "that there may be some sort of legal distinction between rape with an erect penis and rape with a soft penis," and "statements by Sharp advising [Petitioner] that if he did not confess, the county attorney would be unwilling to negotiate a plea and he would face certain conviction at a jury trial." *Id.* at *9. It concluded that although "two of the interrogation tactics employed by Undersheriff Sharp were coercive, . . . [Petitioner's] statements were voluntary and the product of free and independent will when considered in conjunction with all of the other circumstances surrounding the interrogation." *Id.* The KCOA also noted that its conclusion was supported by the timing of the "inappropriate threats or misrepresentations of the law" in relation to the confessions and by the fact that Petitioner's inculpatory oral and written statements went beyond details provided by Sharp during the interrogation. *Id.* at *9-10.

Petitioner now argues to this Court that the KCOA unreasonably determined the facts by finding that Undersheriff Sharp had not made inappropriate promises of leniency when the record before it reflected showed the opposite.[3] (Doc. 1, p. 31.) Regarding the framework in which this

---

[3] As with Ground One, a large portion of Petitioner's argument in Ground Two appears to simply reproduce arguments made to the KCOA and perhaps to the state district court, as well as portions of the KCOA's opinion. (*See* Doc. 1, p.

11

Court must consider this claim, the Tenth Circuit has explained:

> "[T]he ultimate issue of 'voluntariness' is a legal question," but its determination is based on "subsidiary factual questions." *Miller v. Fenton,* 474 U.S. 104, 110, 112, 106 S. Ct. 445, 88 L. Ed. 2d 405 (1985). One such factual question is whether an officer's comments amount to a promise relevant to the voluntariness analysis. *United States v. Lopez,* 437 F.3d 1059, 1064 (10th Cir.2006) ("The district court's determination that [an officer's] actions amounted to a promise of leniency is a factual finding."); *see also United States v. Morris,* 247 F.3d 1080, 1089–90 (10th Cir.2001) (reviewing district court's determination that interrogating officer's conduct did not amount to a promise of leniency under the clearly erroneous standard).
>
> Where, as here, a habeas petitioner challenges a factual finding subsidiary to a legal determination, the challenge necessarily implicates both the accuracy of the finding and the correctness of the legal conclusion. *See Maynard v. Boone,* 468 F.3d 665, 673 (10th Cir.2006) (explaining applicability of § 2254(d)(1) and § 2254(d)(2) to mixed questions of law and fact such as sufficiency of the evidence, on habeas review).

*Sharp v. Rohling*, 793 F.3d 1216, 1226 (10th Cir. July 15, 2015).

Petitioner asserts to this Court that the KCOA "overlooked" the following statement Undersheriff Sharp made during the interrogation: "If you accept this that you made a mistake and you man up to things, [the county prosecutor] will take a plea agreement on it at my recommendation." (Doc. 1, p. 31.) *Id.* Thus, Petitioner asserts, the KCOA's factual finding that Petitioner's decision was not the result of promises by Undersheriff Sharp was unreasonable and contrary to federal law. *Id.* at 32. He further points out that Undersheriff Sharp had no authority to promise a plea agreement and he asserts that it is unlawful for police to promise leniency in exchange for a confession.[4] *Id.* at 31, 38; (Doc. 16, 33-34). Petitioner contends that when the

---

36 (presenting as argument on Ground Two a long, unidentified quote from *Stenberg I*, including the holding that "There is no evidence of any such promise or benefit made in this case," which is the very holding Petitioner challenges in Ground Two. The Court has carefully reviewed Petitioner's filings in their entirety and liberally construes them, as is appropriate since Petitioner proceeds pro se. But the Court sees no need to recite all of the contents of the petition, memoranda, and traverse, so will not do so.

[4] The Court pauses to point out that as the federal law to support his argument, Petitioner cites *Moore v. Czerniak*, 534 F.3d 1128 (9th Cir. July 28, 2008). *Id.* But in 2009, the Ninth Circuit withdrew the 2008 opinion to which Petitioner cites and filed "[a] new majority opinion, concurring opinion, and dissenting opinion." *See Moore v. Czerniak*, 574 F.3d 1092, 1093 (9th Cir. July 28, 2009). Thus, Petitioner's citations are to an opinion that is no longer good law. In

promise of leniency is factored in, the totality of the circumstances reflect that his confession was involuntary. Respondent does not address this argument in his answer.

Liberally construing Petitioner's argument that the KCOA overlooked Undersheriff Sharp's promise that the county attorney would agree to a plea bargain, it appears to be a challenge under 28 U.S.C. § 2254(d)(2), which authorizes this Court to grant federal habeas relief if the state-court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." The Tenth Circuit recently reiterated the "restrictive" standard used when determining whether a federal habeas petitioner is entitled to relief under 28 U.S.C. § 2254(d)(2):

> "[A]ny state-court findings of fact that bear upon [a petitioner's] claim are entitled to a presumption of correctness rebuttable only by clear and convincing evidence." *Simpson v. Carpenter*, 912 F.3d 542, 563 (10th Cir. 2018) (quotations omitted). "The presumption of correctness also applies to factual findings made by a state court of review based on the trial record." *Sumpter v. Kansas*, 61 F.4th 729, 734 (10th Cir. 2023) (quoting *Al-Yousif v. Trani*, 779 F.3d 1173, 1181 (10th Cir. 2015)). "The burden of showing that the state court's factual findings are objectively unreasonable falls squarely on the petitioner's shoulders." *Meek v. Martin*, ––– F.4th –––, –––, 2023 WL 4714719, at *20 (10th Cir. July 25, 2023).
>
> The standard for determining whether the state court's decision was based on an unreasonable determination of the facts "is a restrictive one." *Grant v. Trammell*, 727 F.3d 1006, 1024 (10th Cir. 2013) (quotations omitted). "We may not characterize ... state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance." *Brumfield v. Cain*, 576 U.S. 305, 313-14, 135 S. Ct. 2269, 192 L.Ed.2d 356 (2015) (quotations and alterations omitted). "[A]n imperfect or even an incorrect determination of the facts isn't enough for purposes of § 2254(d)(2)." *Grant*, 727 F.3d at 1024 (citing *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007)). And "it is not enough to show that reasonable minds reviewing the record might disagree about the finding in question." *Brown v. Davenport*, ––– U.S. –––, 142 S. Ct. 1510, 1525, 212 L.Ed.2d 463 (2022)

---

addition, the United States Supreme Court in 2011 reversed the Ninth Circuit's holding in *Moore* and held that "the Court of Appeals erred." *See Premo v. Moore*, 562 U.S. 115, 123 (2011). Moreover, to the extent that Petitioner intended *Moore* to constitute the "clearly established Federal law" to which the KCOA's holding were contrary or that the KCOA unreasonably applied (*see* Doc. 1, p. 32), the phrase "clearly established Federal law" in this context refers only to the holdings of the United States Supreme Court, not to holdings of Courts of Appeals. *See White*, 572 U.S. at 419.

> (quotations omitted). "Instead, § 2254(d)(2) requires that we accord the state ... court substantial deference." *Brumfield*, 576 U.S. at 314, 135 S.Ct. 2269. We thus "defer to the state court's factual determinations so long as reasonable minds reviewing the record might disagree about the finding in question." *Johnson v. Martin*, 3 F.4th 1210, 1218-19 (10th Cir. 2021), *cert. denied*, ––– U.S. –––, 142 S. Ct. 1189, 212 L.Ed.2d 55 (2022) (quotations omitted).
>
> A petitioner must also show "that the [state court] based its decision on the factual error." *Harris v. Sharp*, 941 F.3d 962, 1003 (10th Cir. 2019). The state court's decision is not "based on" a finding if (1) it made the finding in addressing "only subsidiary issues," *Grant*, 727 F.3d at 1024, or (2) other reasons supported the court's decision, *Harris*, 941 F.3d at 1003.
>
> In sum, a factual finding may be unreasonable under § 2254(d)(2) only if the state court "plainly misapprehended or misstated the record" and the "misapprehension goes to a material factual issue that is central to the petitioner's claim." *Menzies v. Powell*, 52 F.4th 1178, 1195 (10th Cir. 2022) (quotations and alterations omitted).

*Frederick*, 2023 WL 5195678, at *5-6.

Even more particularly, "[w]hen the state court's factual determination is based on its review of a recorded exchange, the § 2254(d)(2) test requires only that the state court offer a 'plausible reading of' the exchange." *Id.* at *28 (quoting *Sharp*, 793 F.3d at 1230). Where a state court's factual finding that there were no promises of leniency during an interrogation is "a plausible reading of the interview," the factual determination is not unreasonable under § 2254(d))(2). *Id.* at *28 n. 26.

This Court has reviewed the video recording of the interrogation and the unofficial transcript of the interrogation included in the state-court records. The statement Petitioner now relies on occurred when Undersheriff Sharp was attempting to convince Petitioner to confess. Undersheriff Sharp said:

> It's not a matter of if you did or if you didn't. It's a matter of you need to tell me what happened on your behalf. [Be]cause I really can't go to the prosecutor and tell him. If you have remorse about what happened, there's a chance that things are gonna [*sic*] be less than what they are now, because if we have to go and put those

14

girls on the stand and—and put them through that…[sigh]…he's gonna [*sic*] request anything and everything he possible can plus the kitchen sink to throw at you. If you accept this—that you made a mistake—and you man up to things, Giardine'll take a plea agreement on it. At my recommendation. But if he sees I'm in here for two and three and four hours and you're not wanting to play ball…[shrugs].

When considered in context, the state courts' interpretation of the sentence in question as an improper threat rather than an improper promise of leniency is a plausible reading of the exchange. While it might not be the way this Court would have characterized the statement, the question is whether the KCOA's characterization is plausible, and it is. Thus, under *Frederick*, to the extent that Petitioner asserts that the KCOA's factual finding that there were no promises for leniency was erroneous and requires federal habeas relief, his argument is unsuccessful.

Plaintiff's argument that consideration of Undersheriff Sharp's statement would alter the KCOA's conclusion that his confession was voluntary also fails. It is clear from the KCOA opinion that the KOCA did consider the sentence quoted above when it looked at the totality of the circumstances to determine that the confession was voluntary. The sentence appears in a block quote of examples of "impermissible" statements made by Undersheriff Sharp. *Stenberg I*, 2017 WL 4455307, *8. The KCOA further acknowledged that "Undersheriff Sharp not only *suggested Stenberg would have more positive consequences if he confessed to the crimes*, but suggested negative consequences if he did not confess: elimination of any opportunity to negotiate a plea agreement with the county attorney and certain conviction by a jury." *Id.* (emphasis added). Although the KCOA ultimately held that no improper promise of leniency occurred in the interrogation, it is clear that the KCOA considered the very statement Petitioner now claims was overlooked. The KCOA simply characterized the statement as an improper threat rather than an improper promise of leniency.

Finally, to the extent that the petition and accompanying memorandum of law can be

15

liberally construed to argue that the KCOA's holding that Petitioner's inculpatory statements were voluntary was contrary to, or involved an unreasonable application of, clearly established federal law, that argument is unpersuasive. *See* 28 U.S.C. § 2254(d)(1). As Respondent points out in his answer, the law applied by the KCOA was consistent with clearly established federal case law on the subject of voluntariness of confessions. (Doc. 12, p. 17.) Nor has Petitioner identified a United States Supreme Court case with "materially indistinguishable facts" in which inculpatory statements were found to be involuntary, so this Court is not convinced that the KCOA decision was "contrary to" clearly established Federal law. *See Harmon*, 936 F.3d at 1056. Moreover, the KCOA's holding was not objectively unreasonable, so it was not an unreasonable application of federal law. *See White*, 572 U.S. at 419. Accordingly, this Court denies relief.

## Evidentiary Hearing

Pursuant to Rule 8 of the Rules Governing Section 2254 Cases in the United States District Courts, the Court determines that an evidentiary hearing is not required in this matter. "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *see also Anderson v. Att'y Gen. of Kansas*, 425 F.3d 853, 859 (10th Cir. 2005) ("[A]n evidentiary hearing is unnecessary if the claim can be resolved on the record."). The record in this case is sufficient to resolve the sole issue before the Court and it precludes habeas relief.

## Conclusion

In summary, the KCOA applied the correct legal standards and reasonably determined the facts in the light of the evidence presented to it. Petitioner is not entitled to federal habeas corpus relief and the petition will be denied.

Because the Court enters a decision adverse to Petitioner, it must consider whether to issue

a certificate of appealability. Under Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability should issue "only if the applicant has made a substantial showing of the denial of a constitutional right," and the Court identifies the specific issue that meets that showing. 28 U.S.C. § 2253. Having considered the record, the Court finds petitioner has not made a substantial showing of constitutional error in the state courts and declines to issue a certificate of appealability.

**IT IS THEREFORE ORDERED** that the petition for habeas corpus is denied. No certificate of appealability will issue.

**IT IS SO ORDERED.**

DATED:  This 24th day of August, 2023, at Kansas City, Kansas.

<u>s/ John W. Lungstrum</u>
JOHN W. LUNGSTRUM
United States District Judge